ORIGINAL

UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>   X

CAROLA RUGGIERO,

       Plaintiff,

-vs-

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,
NICHOLAS DELUCA in his individual
capacity, and NEW YORK STATE
CORRECTIONAL OFFICERS POLICE
BENEVOLENT ASSOCIATION,

       Defendants.

                            X

<u>COMPLAINT</u>     **ROBINSON**

<u>Jury trial demanded</u>
<u>ECF Case</u>

**06 CIV. 2599**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**INTRODUCTION**

1.    Plaintiff Carola Ruggiero, a New York State corrections officer, brings this lawsuit alleging sexual harassment, sexual assault and retaliation pursuant to Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. §2000e *et seq.*; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, made actionable through 42 U.S.C. §1983; New York Executive Law §296 *et seq.* and State common law sounding in tort.

**PARTIES**

2.    Plaintiff is a woman who resides in Dutchess County, New York within this judicial district.

3.    Defendant New York State Department of Correctional Services ("DOCS") is a department of the executive branch and may be sued under Title VII.

4.    Defendant New York State Correctional Officers Police Benevolent Association

("NYSCOPBA") is a labor union which may be sued under both Title VII and New York State Executive Law.

5. Defendant Nicholas DeLuca is a sergeant employed by defendant DOCS and a State actor who may be sued pursuant to 42 U.S.C §1983 and State common law.

**JURISDICTION**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343(3) & (4). It also has jurisdiction pursuant to 42 U.S.C. §2000e, *et seq.* and 42 U.S.C. §1983. As the State claims arise from the same facts as the Federal claims, this Court has subject matter jurisdiction over them pursuant to 28 U.S.C. §1367.

7. On or about April 19, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. This suit is timely brought within 90 days of her receipt of the right-to-sue letters.

8. The events giving rise to this suit occurred in Dutchess County, within this Judicial district.

**FACTUAL ALLEGATIONS**

9. Commencing in 1996, plaintiff worked for defendant New York State Department of Correctional Services ("DOCS") as a corrections officer at Greenhaven Correctional Facility. She is also a member of New York State Correctional Officers Police Benevolent Association, a labor union for which she was shop steward.

10. Commencing in October 2004, Sgt. Nicholas DeLuca began to repeatedly pressure plaintiff to have sex with him and made sexually inappropriate comments about her body. Although plaintiff rejected DeLuca's sexual advances, he persisted in creating a hostile work environment on account of her gender.

11. On Saturday, February 19, 2005, the sexual harassment escalated from verbal to physical, when DeLuca grabbed plaintiff by the shoulder, pinned her to a desk and tried to kiss her. Later that day, when plaintiff told DeLuca that he was making her uncomfortable, he said that he could not help himself. The next day, DeLuca called plaintiff to a remote area of the prison and said that he should not have tried to kiss her but that he wanted to "fuck" her "so bad." He then asked plaintiff when they were going to get together.

12. As plaintiff's supervisor, DeLuca regularly radioed plaintiff to remote areas in the prison in order to sexually harass her in solitude. An example of this practice took place on February 21, 2005, when DeLuca called plaintiff into an office and said, "when are we going to get together. You know that I want to fuck you." Although plaintiff told DeLuca that she was not interested, he persisted in telling her in graphic detail how they would have sex together. Since plaintiff must comply with any supervisory command to report to any area in the prison, when DeLuca summoned her to discrete areas to facilitate a sexual relationship, she could not refuse his direct order.

13. On another occasion, DeLuca told plaintiff that he had enough influence in Albany to prevent her from getting him in trouble for the harassment and that he was "untouchable."

14. In mid-February 2005, DeLuca also placed plaintiff in danger at the prison by beating up an inmate and telling that inmate that the beating was on behalf of the plaintiff.

15. On February 24, 2005, plaintiff met with DeLuca in an effort to convince him to leave her alone. DeLuca threatened plaintiff during this meeting and attempted to intimidate her into silence.

16. On March 1, 2005, plaintiff called Charlie Harvey of DOCS's Affirmative Action Program.

17. Harvey discouraged plaintiff from pursuing any sexual harassment complaint, telling her that her complaint would not have merit since it was her word against DeLuca's. He said that since plaintiff had no proof of the harassment, DOCS would not investigate her complaint but would put DeLuca on notice that she had complained.

18. In early March 2005, plaintiff called NYSCOPBA headquarters in Albany to ascertain her rights in the event that she could not persuade DeLuca to stop harassing her.

19. At least two union officials discouraged plaintiff from making a complaint and led her to believe that they had violated her privacy by telling DeLuca about her call.

20. On March 4, 2005, plaintiff also reported the sexual harassment to Gale Haponik, Greenhaven's Deputy Superintendent of Administration. Haponik said that the harassment would be reported. She called Charlie Harvey in plaintiff's presence. No one affiliated with DOCS promised plaintiff any protection from DeLuca.

21. Thereafter, DeLuca asked plaintiff's friends and colleagues about her complaint and spread false information about her. Defendant DOCS failed to prevent DeLuca from this activity and undertook no meaningful investigation into her complaint.

22. Instead, DOCS commenced a course of action designed to injure plaintiff's reputation and to blame her by claiming that plaintiff was a flirt who had suffered no harassment by DeLuca.

23. The shock resulting from defendants' refusal to take her sexual harassment complaint seriously made it impossible for plaintiff to work. Plaintiff last worked in late February 2005. The retaliation from DeLuca and betrayal that plaintiff experienced at the hands of NYSCOPBA and DOCS caused her to fear for her safety and triggered an emotional breakdown that resulted in treatment at a mental health facility in Westchester County.

24. In or about March 2006, DOCS terminated plaintiff's employment.

25. As a result of defendants' misconduct, plaintiff has lost her career, suffered lost wages and benefits and severe physical and emotional damages, including extended hospitalization and treatment.

## CAUSES OF ACTION

26. Plaintiff incorporates the allegations in paragraphs 1-25 as if fully restated herein.

27. Defendant DeLuca knowingly and willfully violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by depriving plaintiff of her right to equal employment opportunity.

28. Defendants DOCS and NYSCOPBA knowingly and willfully violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* and the New York Human Rights Law §296 by discriminating against plaintiff on account of her gender and retaliating against her for her lawful complaint of sexual harassment

29. Defendant DeLuca knowingly and willfully violated the common law of the State of New York when he sexually assaulted plaintiff, sexually harassed her and retaliated against her after she complained of his misconduct. Plaintiff preserved her State common law claims against DeLuca by timely filing an action in State Supreme Court.

WHEREFORE, plaintiff prays that this Honorable Court:

    a. accept jurisdiction over this matter;

    b. empanel a jury to fairly hear and decide this matter;

    c. award to plaintiff back and front pay;

    d. award to plaintiff compensatory damages sustained as a result of defendant's discriminatory practices;

  e.  award to plaintiff punitive damages for defendant's wilful and outrageous conduct in connection with her federal claims;

  f.  award attorneys fees and costs; and

  g.  award any other relief deemed just and proper.

Dated:  March 28, 2006
     Chester, New York

Respectfully submitted,

S/ *Helen G. Ullrich*
HELEN G. ULLRICH (HU 6597)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277

Counsel for plaintiff